UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

                                Case No. 09-186
                                HON. AVERN COHN

JOSE A. SANDOVAL,

    Defendant.

_____/

**MEMORANDUM AND ORDER
DENYING MOTION FOR JUDGMENT OF ACQUITTAL
OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

This is a criminal case. On May 03, 2010, after a five (5) day trial, defendant was found guilty by a jury of Obstructing the Due Administration of Justice, 18 U.S.C. § 1503, and acquitted of Subornation of Perjury, 18 U.S.C. § 1622.

Now before the Court is defendant's Motion For Judgment of Acquittal, Or In The Alternative, For A New Trial (Doc. 84), essentially on the grounds the evidence was insufficient to support a conviction. Defendant also says he should be granted a new trial because a "miscarriage of justice occurred due to the improper admission of [404(b) evidence], and argument that it be used for the impermissible propensity purpose."

For the reasons which follow, the motion is DENIED.

I.

A.

18 USC §1503 reads in part:

> (a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). If the offense under this section occurs in connection with a trial of a criminal case, and the act in violation of this section involves the threat of physical force or physical force, the maximum term of imprisonment which may be imposed for the offense shall be the higher of that otherwise provided by law or the maximum term that could have been imposed for any offense charged in such case.

B.

The indictment charges as to Obstructing the Due Administration of Justice:

> Beginning not later than February 13, 2009 and continuing until not later than April 22, 2009, in the Southern Division of the Western District of Michigan, the Defendant, Jose A. Sandoval, did corruptly influence, obstruct and impede, or endeavor to influence, obstruct, and impede, the due administration of justice in <u>United States v. Rocio Hernandez-Garcia, a/k/a Harlenne Perez-Trujillo</u>, No. 1:09-CR-36, in the United States District Court for the Western District of Michigan, by committing numerous acts designed to interfere with the giving of truthful testimony by a material witness for the United States, including, but not limited to,

one or more of the following: (1) on February 22, 2009, at the Newaygo County Jail, Defendant met with Marcos Guerrero-Villareal, a/k/a Miguel Angel Najera, hereinafter "the material witness," who was then in custody as a material witness pending a deposition in Case No. 1:09-CR-36 and who was represented by a Court-appointed attorney from the Federal Public Defender's Office, without the knowledge or consent of that attorney and after that attorney had informed Defendant on or about February 19 that the material witness would not cooperate with the defense in Case No. 1:09-CR-36; (2) during that meeting, Defendant, knowing that the material witness had testified truthfully in a previous proceeding and that he was scheduled to be deposed on February 24, 2009, attempted to persuade him to "fire" his attorney and to falsely recant that previous testimony and to deny facts asserted in that testimony; (3) thereafter, and also on February 22 at the Newaygo County Jail, Defendant encouraged his client, Rocio Hernandez-Garcia, a/k/a Harlenne Perez-Trujillo, to attempt to persuade the material witness to "fire" his attorney and to falsely recant prior testimony when the two were transported by the United States Marshals Service from the Newaygo County Jail to Grand Rapids on February 24 for the purpose of the deposition; (4) between on or about February 25 and February 27, 2009, Defendant, who had been warned on or about February 25 by Court-appointed counsel for the material witness not to have any further contact with their client, and for the purpose of obtaining a hearing in which he could attempt to deceive the Court into allowing him to meet with the material witness again, repeatedly called the chambers of the United States Magistrate Judge who was presiding over the material witness proceeding and requested that a status conference be held regarding the witness; (5) on March 3, 2009, and at the status conference that had been ordered in response to his telephone calls, Defendant falsely stated to the presiding United States Magistrate Judge that he had telephoned the Court because he had been told by relatives of the material witness that the witness wanted to meet with him; (6) at that same proceeding on March 3, when asked directly by the presiding judge whether he had contacted the material witness while the latter was in custody as a material witness, Defendant falsely denied that he had done so, when in fact he had met in person, and exclusively, with the witness at the Newaygo County Jail for approximately 16 minutes on February 22,

3

2009; and (7) on March 5, 2009, during the deposition of the material witness in Grand Rapids, Defendant twice approached the Federal Public Defender, who was present in court on behalf of the witness, and, after the witness had attempted to recant his earlier testimony and had stated that he did not want to give additional testimony, asked the Federal Public Defender to interfere with continued direct examination of the material witness.

## C.

### 1.

The jury was instructed as to the Obstruction of the Due Administration of Justice charge without objection as follows:

> Count 1 of the Indictment accuses the Defendant of corruptly endeavoring to influence, obstruct or impede the due administration of justice. For you to find the Defendant guilty of this crime, you must be convinced that the Government has proved each and every one of the following elements beyond a reasonable doubt:
>
> > <u>First</u>, that the judicial proceeding identified in the indictment was pending at the time of the alleged conduct.
> >
> > <u>Second</u>, that the Defendant knew this proceeding was pending; and
> >
> > <u>Third</u>, that the Defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice in the proceeding as detailed in the indictment.
>
> "Corruptly endeavors" means that the defendant knew the proceedings were pending, intended to obstruct the proceedings and acted in a manner that has the natural and probable effect of impeding justice. However, it is not an unlawful attempt to influence or impede a witness, or the due administration of justice, for one to seek to obtain from a witness a statement of the facts as he believes them to be, without the exercise of undue influence, even though such a statement may conflict with prior testimony given by the one

4

> making the statement.
>
> You are advised that the government does not have to prove that defendant actually succeeded in influencing, obstructing, or impeding the administration of justice, the government need show only that defendant's actions had the natural and probably effect of impeding justice.
>
> If you are convinced that the Government has proven all of these elements as to Defendant, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find that Defendant not guilty of this charge.

D.

The jury was also instructed as follows:

> You have heard testimony that the defendant committed acts and wrongs other than the ones charged in the indictment. If you find the defendant did those acts and wrongs, you can consider the evidence only as it relates to the government's claim on the defendant's intent or absence of mistake or accident. You must not consider it for any other purpose.

II.

A.

To prevail on his motion for judgment of acquittal defendant must show that his conviction was based on insufficient evidence. FED. R. CRIM. P. 29.

In assessing a challenge to the sufficiency of evidence, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original). The Court must draw all available inferences and resolve issues of credibility in favor of the verdict. <u>United States v. Jones</u>, 102 F.3d 804, 807 (6th Cir. 1996). The Court does

not weigh the evidence or assess witness credibility. United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir. 1995).

B.

As to defendant's motion for new trial, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33. The decision whether to grant a Rule 33 motion lies within the Court's sound discretion. United States v. Davis, 15 F.3d 526, 531 (6th Cir. 1994). "The defendant bears the burden of proving that a new trial should be granted." Id.

Under Rule 33, the task of the trial judge is to ascertain whether a verdict is against the manifest weight of the evidence. See Tibbs v. Florida, 457 U.S. 31, 42 (1982). A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence. Id. When considering a motion for new trial based upon the weight of the evidence, trial judges can act in the role of a "thirteenth juror" and consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. United States v. Ashworth, 836 F.2d 260, 266 (6th Cir. 1988).

III.

A.

Twelve (12) witnesses testified in support of the government's case as follows:

- Dan Gywn - an Immigration and Customs Enforcement (ICE) agent

- Miguel Najera - a material witness in the government's prosecution of Harlenne Perez for document fraud

- Margaret Hetherington - Magistrate Judge Scoville's case manager and secretary

- Sean Tilton - the assistant Federal Defender who represented Najera

- Ray Kent - the Federal Defender for the Western District of Michigan

- Harlenne Perez - defendant's client who was being prosecuted for document fraud

- Thomas Greer - a Newaygo County Deputy Sheriff working at the Newaygo County Jail

- Benjamin Garcia - an informant for the government, and once a client of defendant

- Abel Barrera - Perez's boyfriend

- Blair Babcock - an ICE agent

- Reyna Trujillo - mother of Perez

- Alex Murieta - cousin of Perez

B.

Defendant testified in his defense. He was the sole defense witness.

C.

Exhibits included a video of defendant's visit to the Newaygo County Jail, the sign-in log at the jail, a floor plan of the jail, transcripts of telephone calls and voice mails, video depositions, excerpts of grand jury testimony, e-mails, letters (including translations) and a government form.

IV.

The evidence in a light most favorable to the government by and large tracked the indictment. In sum:

- Perez was arrested by the government as an illegal immigrant. At the

- time of her arrest, Perez was under investigation for document fraud.

- Perez retained defendant as her lawyer.

- Perez was initially charged with illegal entry, and subsequently charged with document fraud.

- Najera was taken into custody as a material witness in Perez's document fraud case. Najera was an illegal immigrant subject to being deported.

- Tilton was assigned to represent Najera.

- Najera testified to the grand jury describing his involvement with Perez in document fraud.

- The government intended to depose Najera to preserve his testimony for trial so he could immediately be deported.

- Defendant, after being denied permission to talk to Najera by Tilton, and without notifying him, surreptitiously visited Najera in the Newaygo County Jail. Defendant did not sign the log at the jail as a visitor to Najera.

- At the jail visit Najera testified that defendant asked him to change his grand jury testimony when he was questioned at his deposition. Najera also said that defendant tried to persuade him to fire Tilton.

- Perez, while at the Newaygo County Jail, had a telephone conversation with Barrera in which she asked Barrera to tell defendant of her efforts to get Najera to change his testimony.

- In a van ride to the courthouse, Najera testified that Perez talked to him about changing his testimony and to fire Tilton; Perez testified that this conversation was at defendant's suggestion.

- At the hearing at which Perez was arraigned on the document fraud charge, defendant complained of his inability to talk to Najera. This occurred after defendant had already talked to Najera at the Newaygo County Jail.

- Najera told Tilton about defendant's visit to the jail. Tilton told his superior, Kent, about what Najera told him.

- Defendant asked Tilton to allow him to talk to Najera. He did not tell Tilton he had already done so. Tilton said no.

8

- Tilton and Kent told Magistrate Judge Scoville what Najera told Tilton about defendant's visit to the jail.

- Magistrate Judge Scoville held a hearing at defendant's request to consider allowing defendant to talk to Najera. When asked if he had talked to Najera, defendant said no.

- Najera was deposed. Initially Najera testified that he did not participate with Perez in forging documents. Subsequently, in the deposition Najera admitted participating in the forgery of documents as well as the jail visit.

- The government learned of the Newaygo County Jail visit for the first time at the deposition.

- Perez testified about conversations with defendant which included talk about Perez' guilt and the need to arrange for destruction of evidence.

- Barrera testified about telephone conversations with Perez and his talking to defendant about them. These conversations included talk about efforts to arrange for destruction of evidence. Barrera also testified about a conversation with defendant about his talking to Perez to urge her not to talk to the government about defendant.

- Many of the telephone calls testified to were corroborated by telephone records.

- Murieta, Perez's cousin, testified about odd and unexpected telephone calls with defendant, as well as a meeting in which defendant urged him to persuade Perez not to cooperate with the government.

V.

A.

Defendant bottoms on his argument that the evidence in a light most favorable to the government was insufficient to sustain defendant's conviction for obstruction of justice in light of his acquittal for subornation of perjury. The acquittal, defendant says, means that the jury did not believe the

> (1) meeting with the material witness who was represented by counsel without the knowledge of counsel knowing that the material witness would not

9

>     cooperate with the defense;
> 
> (2) attempting to persuade the material witness to fire his lawyer and falsely recant his previous testimony and deny facts asserted in that testimony;
> 
> (3) encouraged his client to also attempt to persuade the material witness to fire his lawyer and falsely recant his prior testimony;

and that the

> (4) calling the chambers of Judge Scoville asking that a status conference regarding the witness be held when he knew counsel for the witness would not consent to contact, and with the intent to deceive the court in allowing him to meet with the material witness again;
> 
> (5) falsely stating to Judge Scoville at the March 3 status conference that relatives of the material witness told him the material witness wanted to meet with him;
> 
> (6) falsely stating to judge Scoville at the March 3 status conference that he had not previously met with the material witness; and
> 
> (7) approaching counsel for the material witness at the March 5 deposition and suggesting that counsel for the witness terminate the deposition

is insufficient to support the conclusion.

Defendant goes on to argue that

- lying to Magistrate Scoville did not have the "natural and probable effect of obstructing justice because Judge Scoville knew he was lying, and therefore Judge Scoville's actions could not have been affected by defendant";

- disagreement with Kent over his right to talk to Perez was no more than a customary disagreement among lawyers in which one of the lawyers

> asked a judge to resolve the matter;

- while the meeting with Najera in the Newaygo County Jail may have been an ethical violation, this conduct did not obstruct justice standing by itself.

In sum, defendant says that "given the finding of no subornation, there was insufficient evidence to support the obstruction of justice based on the acts listed in the Superceding Indictment." (Amended Brief [etc], p. 15 (Doc. 92)).

B.

The government says that defendant's assertions regarding his acquittal on the charge of subornation of perjury are pure speculation. The government concedes that it is possible that the jury did not believe its theory "that Mr. Sandoval asked Miguel [Najera] to lie, nor did it believe that Mr. Sandoval tried to get Harlenne [Perez] to induce Miguel [Najera] to lie." However, it goes on to state:

> It is just as likely – and no more speculative than Defendant's assertion – to suggest that the jury, having receive an <u>Allen</u> charge late Monday after deliberating for almost two days, rendered a compromise verdict on Count 2, given that the verdict was returned almost immediately after deliberation resumed. It is also just as likely – and no more speculative than Defendant's assertion – to suggest that the jury concluded that Defendant was fully invested in the plot to obtain Najera's false recantation, but that his misconduct was not the actual catalyst for Najera's ultimate perjury.

(Government's Brief [etc.], p. 3, n.1 (Doc. 91)). It says that the only certainty with respect to the jury's verdict was that it did not believe defendant's testimony that he did not seek to improperly subvert the prosecution of Harlenne Perez.

Turning to the evidence offered during its case in chief, the government says that it was sufficient to establish each of the elements of obstruction of justice.

11

Najera testified that defendant visited him in the Newaygo County Jail and asked him to recant his grand jury testimony when questioned during his deposition even though he told defendant that he had told the truth. He further testified that Perez also asked him to change his testimony. Finally, he testified that, due to the efforts of Perez, Barrara, and defendant, he lied during his deposition when he denied participating with Perez in the making and trafficking of false documents.

Perez testified that she had conversations with defendant about Najera's testimony and discussed asking him to change his testimony. She also testified that defendant knew that she manufactured and trafficked false documents and that he had discussed the need to find and destroy any physical evidence of her operation.

Finally Berrera testified that he had a telephone conversation with defendant in which they discussed the need to destroy evidence of Perez' guilt. He also testified that defendant asked him to intercede with Perez and persuade her not to testify against him.

The government says that, based on this evidence, a rational trier of fact could have found the essential elements of the crime of Obstructing the Due Administration of Justice beyond a reasonable doubt.

C.

When the evidence is viewed in a light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. First, there is no dispute that the judicial proceeding against Perez was pending at the time of the alleged conduct and that defendant was aware of that judicial proceeding because he was representing Perez.

12

The evidence presented during the government's case in chief was also sufficient to permit a rational juror to find beyond a reasonable doubt that defendant corruptly endeavored to influence, obstruct, or impede the due administration of justice in the proceeding against Perez. Both Najera and Perez testified that defendant sought to convince Najera to alter his testimony that he and Perez participated in a document manufacturing and trafficking scheme. Both Perez and Barrera testified that defendant knew that Najera and Perez did in fact participate in such a scheme. Considering these two factors together, a rational trier of fact could have found beyond a reasonable doubt that defendant intended to obstruct the proceedings against Perez by convincing Najera to recant his truthful testimony and replace it with false testimony. Because Perez and Barrera testified that defendant knew that Najera's grand jury testimony was truthful, a rational trier of fact could have found beyond a reasonable doubt that defendant did not merely seek to obtain a statement of the facts "as he believed them to be" from Najera.

Although defendant's own testimony contradicted that of Najera, Perez, and Barrera it is not a sufficient basis on which to grant a motion for acquittal. As noted above, the Court does not weight the evidence or assess witness credibility. Jackson, 55 F.3d at 1225.

Finally, the Court is not convinced by defendant's argument that the jury's verdict of not guilty on Count II - Subornation of Perjury is inconsistent with its verdict of guilty on Count I - Obstruction of Justice. As the government points out, any attempt to divine the basis of the jury's not guilty verdict is an exercise in speculation. While the jury may have believed defendant's testimony that he did not ask Najera to lie and did not ask Perez to induce Najera to lie, "[i]t was also just as likely – and no more speculative . . . –

to suggest that jury concluded that Defendant was fully invested in the plot to obtain Najera's false recantation, but that his misconduct was not the actual catalyst for Najera's ultimate perjury" (Government's Brief [etc.], p. 3, n.1 (Doc. 91)). The government has articulated a theory under which the jury's two verdicts can be reconciled with each other. Thus, when the evidence is taken in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant endeavored to obstruct the due administration of justice, but did not ultimately suborn perjury.

## VI.

Defendant argues for a new trial on the grounds that a miscarriage of justice occurred as a consequence of the admission of FED R. EVID. 404(b) evidence, and that in final argument the government used it for an impermissible propensity purpose.

## A.

Pretrial, defendant moved in limine to exclude evidence proffered by the government relating to a prior incident in which the government said that defendant told Garcia, who was being investigated for illegal entry, to lie on an immigration form (Doc. 56). Particularly, the government said the defendant told Garcia to state he had never been previously deported.

The government said that such evidence would be probative in demonstrating defendant's intent to deceive, that defendant did not make an innocent mistake, and "that the defendant has no qualms about advising people to lie during official proceedings." (Doc. 60).

The Court granted the motion in part and denied it in part (Doc. 64). The Court

stated (Tr. 04/21/10, p. 7):

> The other acts evidence can only be offered if defendant testifies. It cannot be offered in the government's case in chief, and there can be no reference to it in the opening statement. If [defendant] testified, he can be cross-examined as to his conversations . . . with [Garcia], and if he admits it that's the end of the matter. If he denied it then [Garcia] can be called.

B.

1.

Garcia testified at trial in the government's case in chief. No reference was made to the incident.

2.

Defendant testified on his own behalf at trial. In cross-examination he acknowledged that in 2007 he represented Garcia in an immigration matter. He denied ever telling Garcia to falsify an answer on an immigration order asking if he had ever been deported. Particularly (Tr. 04/29/10, p. 155):

> Q. Is it not true that when this form was filled out you and Mr. Garcia had a conversation about the fact that he would be lying if he checked the box no to that question that we asked, that I just asked, and that you told him to go ahead and do it because maybe immigration wouldn't find out about it?
>
> A. That's not true.
>
> Q. So then is it also not true that you told Mr. Garcia Garcia when he had his follow-up interview under oath to lie and say that this form was true?
>
> A. That's also not true.

3.

Garcia was recalled to testify in the government's rebuttal case. He testified that in 2007 defendant assisted him in completing a form to submit to immigration as part of an application for a green card, based on his wife being a citizen. He testified that he discussed with defendant the fact that he had once been deported, and that if he told that to immigration authorities there was no way he could obtain a green card. Garcia then testified that he made a false statement on the immigration form of which defendant was aware, and that in addition defendant was aware that he would likely be asked a question about any prior deportation at an interview, and that he would "have to lie once again during [the interview] (Tr., 04/29/10, p. 178). Particularly Garcia testified (Tr., 04/29/10, pp. 179-180):

> Q. [B]efore you attended that hearing did he give you any other reasons for why he did not want to go?
>
> A. Yes, one more. He said to me here that since it was a fraudulent application, you know, if they found out that we both knew about this he could lose his license so he didn't want to be there.
>
> * * *
>
> Q. Did you and Mr. Sandoval discuss what you should say if the immigration officials found out that you had told lies at this interview?
>
> A. Yes. He told me to say if that was the case that he didn't know about the situation.

## C.

In the rebuttal closing argument the government's lawyer said (Tr., 04/30/10, Excerpt 1, pp. 7-9):

> Mr. Chamberlain also brought your attention to Ben Garcia, and Mr. Chamberlain asked you near the end of his

16

presentation, well, why would, why would Sandoval do this? Why do this? Well, remember when Ben Garcia got up and testified for the second time? He told you that in 2007 he went to Mr. Sandoval to get his immigration status changed when his own wife became a U.S. citizen and he had the opportunity to go to the front of the line as a green card holder. Except there was a problem. Remember, Mr. Garcia said I knew I couldn't do it. Mr. Sandoval and I talked about the fact that I was never going to be able to really do that if I told the truth about the fact that I had been deported for pretending to be a citizen when I first came into the country.

How did they solve that problem? . . . On Exhibit 13, the immigration form that Mr. Sandoval signed as the person filling it out and representing Mr. Garcia? Just lie about it. Lie about it under penalty of perjury.

And when Mr. Garcia went to the interview where . . . he knew he was going to be placed under oath and talked to Mr. Sandoval about that, how are they going to make that problem go away? Well, lie about it. And Mr. Sandoval said, well, I am not going with you. You do it. That's how you are going to get your green card, but I'm not going over there with you because, you know, if something happens my rear end is going to be on the line just like yours.

So why was that brought up? This is not an unusual pattern of behavior for Mr. Sandoval. He didn't view this as going an extra mile. This is just how he conducted his business. And, remember, this episode with Mr. Garcia is in his area of specialty, to the extent that you think that he somehow doesn't suddenly know that he can't ask people to lie when he walks over to criminal court and represents people in criminal cases. This is an immigration case. That's just what he does apparently, so it's not a big deal for Mr. Sandoval to do this.

D.

1.

Defendant argues that a miscarriage of justice occurred in the admission of the Garcia incident, and in the manner in which the government described it in final

17

argument, entitling him to a new trial.

First, defendant says that the jury could not reasonably find defendant in fact told Garcia to lie by a preponderance of the evidence, the first requirement for admission of such evidence. United States v. Bell, 516 F.3d 433, 441 (6th Cir. 2008). The short answer to this argument is that it was for the jury to decide whether Garcia or defendant was telling the truth as to the incident.

Second, defendant says that while the Court properly instructed the jury as to the use of such evidence, see p. 5, supra, the government argued to the jury it should consider the evidence for an impermissible purpose; Garcia's testimony established that it was defendant's usual practice to induce people to lie. "This is the way [defendant] does business." Thus defendant says the government was using the evidence for "propensity purposes, a clearly impermissible use."

2.

As pointed out by the government in final argument, defendant argued (Tr., 04/30/10, excerpt 2, p. 58), "There is absolutely no motive for [defendant] to do what he did, as the government has alleged." Having put motive as an issue for the jury, the jury certainly had the right to know if on a prior occasion defendant had encouraged lying as a way of dealing with an immigration matter, as the government said in its response brief (Doc. 91).

3.

Defendant acknowledges that there was no contemporaneous objection to the government's argument, and goes on to argue that the government's conduct constituted plain error. Under such circumstances defendant says the Court should

18

"consider whether this comment in the government's closing argument warrants a new trial."

In considering a plain error argument, the Court must consider whether there was (1) error; (2) the error was plain or obvious; (3) the error affected defendant's substantial right by being prejudicial; and (4) the error affected the fairness, integrity or public reputation of the proceeding. Johnson v. United States, 520 U.S. 461, 466-67 (1997).

Applying these factors to the circumstances here the Court cannot say there was error in the admission of the Garcia incident, or in the government's final argument, or if there was, it was plain error; or if it was plain error it affected defendant's substantial rights.

4.

As put by the government in the Government's Response In Opposition To Defendant's Motion For Acquittal And New Trial (Doc. 91, p. 10):

> In context, the government's comment was proper, was responsive to arguments raised by defendant, and was also not the main thrust of the government's argument on motive and intent.[7]  See, e.g., United States v. Gold Unltd., Inc., 177 F.3d 472, 487 (6th Cir. 1999) (upholding admission of previous unrelated fraud activity offered in response to defendants' assertion that they were operating legitimate business without fraudulent intent); United States v. Benton, 852 F.2d 1456 (6th Cir. 1988) (upholding admission of prior acceptance of illegal payoffs in response to defendant's assertion that charged payoffs were accepted only to maintain cover of ongoing investigation).

SO ORDERED.

          S/Avern Cohn
          AVERN COHN
          UNITED STATES DISTRICT JUDGE

Dated: August 17, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 17, 2010, by electronic and/or ordinary mail.

          S/Julie Owens
          Case Manager, (313) 234-5160

---

[7] Defendant asserts incorrectly that the government "repeatedly" stressed the Garcia testimony. (Def.'s Br. At 15.)